**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **D & S MARINE TRANSPORTATION, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:  14-2048** |
| **S & K MARINE, LLC, ET AL.** | **SECTION: "S" (4)** |

**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. #18) is **GRANTED** as to plaintiff's breach of contract, bad faith breach of contract, and detrimental reliance claims against Ben Strafuss and BJS Blessey, L.L.C., and such claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. #18) is **DENIED** as to plaintiff's breach of contract, bad faith breach of contract, and detrimental reliance claims against S & K Marine, and plaintiff's tortious interference with contractual relations claim agaisnt Ben Strafuss.

**BACKGROUND**

This matter is before the court on a motion to dismiss filed by defendants, S & K Marine, L.L.C., Ben Strafuss, and BJS Blessey, L.L.C.  Defendants argue that plaintiff, D & S Marine Transportation, LLC, has failed to state a claim against them upon which relief can be granted.

D & S Marine is a marine transportation company that operates a fleet of tow boats that move barges.  It alleges that in 2013, before the formation of S & K Marine,[1] it engaged in discussions with Calvin Klotz, regarding the construction of two vessels that were to be owned by S & K Marine, and operated by D & S Marine.  D & S Marine alleges that:

---

[1] S & K Marine was registered with the Louisiana Secretary of State on December 11, 2013.

> [t]he parties entered into a bareboat charter agreement establishing a
> fixture by agreeing on essential terms of the charter such as the rate,
> initial term of five (5) years with option to extend for another five (5)
> year term, vessel maintenance, and option to purchase after the initial
> term, all while working out remaining details to finalize agreement.

The parties continued to "refine minor details of their agreement through February 2014."  D & S Marine also alleges that, with defendants' consent, it "undertook a significant amount of work with the shipyard to modify the vessel under construction to meet the configurations required and used in [its] fleet."

On November 4, 2013, Pat McDaniel, an employee of D & S Marine, outlined the "the agreed upon terms of the charter" in an electronic mail message to the company's attorney.  These terms included the five year term and five year renewal option of the charter party, the purchase options, the $850.00 daily charter hire, and that D & S Marine would supply all fuel, lubes and related taxes, would crew and maintain the vessel, and carry vessel insurance.

On January 31, 2014, McDaniel sent an electronic mail message to Klotz stating that they "should finalize the contract next week as [McDaniel] will send [Klotz] a copy to review." McDaniel also indicated that he did not think that there were any other changes other than those that were previously discussed.  Klotz replied that they would meet the following week to finalize the contract.  Also on January 31, 2014, D & S Marine entered into a time charter agreement for the same vessel under construction, with one of its customers.

On February 10, 2014, McDaniel sent an electronic mail message to Klotz stating that the attorney "is sending over a final version [of the charter party] today, as we will get it to you shortly for review. I think we are done??"

2

D & S Marine alleges that between February 10, 2014, and February 14, 2014, Strafuss met with Walter Blessey, Chairman and CEO of Blessey Marine Services, Inc., and thereafter informed Klotz that "he would be chartering the vessels to Blessey Marine Services, Inc." D & S Marine claims that it "became aware the charter agreement was breached when workers at [the shipyard] informed [it] that major changes had been ordered on the vessel."

D & S Marine filed this action against defendants in the Thirty-Second Judicial District Court, Parish of Terrebonne, State of Louisiana alleging that defendants breached a charter party entered into between D & S Marine and S & K Marine. D & S Marine also alleges that defendants breached that contract in bad faith, that Strafuss committed an intentional interference with contractual relations, and that defendants are liable for detrimental reliance. Defendants removed the action to the United States District Court for the Eastern District of Louisiana, alleging diversity subject matter jurisdiction under 28 U.S.C. § 1332. Defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that D & S Marine failed to state any viable claims under either Louisiana law or the general maritime law.

## ANALYSIS

**A.     Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded.[2] In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl.

---

[2] D & S Marine asserts that Louisiana's fact-pleading standard, rather than the notice-pleading standard of Rule 8 of the Federal Rules of Civil Procedure applies to the determination of the sufficiency of the complaint because this action was originally filed in Louisiana state court and later removed to federal court. Rule 81(c)(2) of the Federal Rules of Civil Procedures provides, in pertinent part, that "[a]fter removal,

v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face when

the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant

is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual

allegations must be enough to raise a right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S.Ct. at

1965.  The court "must accept all well-pleaded facts as true and view them in the light most

favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir.

2008).  However, the court need not accept legal conclusions couched as factual allegations as true.

Iqbal, 129 S.Ct. at 1949-50.

In considering a motion to dismiss for failure to state a claim, a district court may consider

only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean

Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  However, "[d]ocuments

that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are

referred to in the plaintiff's complaint and are central to her claim." Id. at 498-99 (internal citations

omitted).

**B.     Choice of Law**

---

repleading is unnecessary unless the court orders it." After removal, a plaintiff is not required to replead to
conform the complaint to Rule 8. See White v. State Farm Mut. Auto Ins. Co., 479 Fed. Appx. 556, 561 (5th
Cir. 2012). However, Rule 81(c)(1) provides that the Federal Rules of Civil Procedure "apply to a civil action
after it is removed from state court."  Therefore, it is appropriate to apply Rules 8 and 12(b)(6) to this case.

Defendants argue that D & S Marine's claims arise under Louisiana law, not the general maritime law. They contend that the alleged charter party was not a maritime contract because the vessel was not completed, and thus the general maritime law does not apply to D & S Marine's claims.

Whether a contract is a "maritime contract" depends on its nature and character, rather than the place of its execution or performance." <u>Davis & Sons, Inc. v. Gulf Oil Corp.</u>, 919 F.2d 313, 316 (5th Cir. 1991) (citing <u>N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.</u>, 39 S.Ct. 221, 223 (1919); <u>Kossic v. United Fruit Co.</u>, 81 S.Ct. 886 (1961)). "A contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment is subject to maritime law." <u>Id.</u> (quoting E. Jhirad, A. Sann, B. Chase & M. Chynsky, <u>Benedict on Admiralty</u>, § 182 (1988)). The "[d]etermination of the nature of a contract depends in part on historical treatment in the jurisprudence and in part on a fact-specific inquiry." <u>Id.</u>

In <u>Cain v. Transocean Offshore USA, Inc.</u>, 518 F.3d 295, 301 (5th Cir. 2008), the United States Court of Appeals for the Fifth Circuit stated that the court has "previously noted the historical tradition that vessels under construction give rise to neither a maritime contract nor a maritime tort." (quotation and citation omitted). This precedent is consistent "with the historical perspective that vessels under construction are treated differently from completed vessels[,]" because "[o]ther courts have similarly concluded that an incomplete structure that has not been put into navigation as an instrument of commerce is not a vessel." <u>Id.</u> (citations omitted).

It is undisputed that the vessel to which the alleged charter party applied was under construction at all pertinent times. Actions concerning that uncompleted vessel cannot give rise to

either a maritime contract or maritime tort. Id.  Therefore, Louisiana law applies to D & S Marine's claims against defendants.

## C.      D & S Marine's Breach of Contract and Bad Faith Breach of Contract Claims

D & S Marine alleges that S & K Marine breached a charter party that it had with S & K Marine, and that it did so in bad faith.  S & K Marine argues that D & S Marine cannot sustain such claims under Louisiana law as there was no contract to breach because the parties contemplated that the contract would be executed in a specific form, which never occurred.[3]  S & K Marine argues that D & S Marine's allegations and the draft charter party demonstrate that the parties intended the contract to be reduced to writing.  D & S Marine argues that S & K Marine tacitly accepted the agreed upon terms of the contract without the writing by allowing D & S Marine to make expenditures to modify the vessel to conform to its fleet.  D & S Marine characterizes this as performance under the contract.

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." LA. CIV. CODE art. 1906.  The formation of a valid contract requires: (1) capacity to contract; (2) mutual consent; (3) a certain object; and, (4) a lawful purpose. Id. at arts. 1918, 1927, 1966, and 1971.

---

[3] Strafuss and BJS Blessey argue that they cannot be held liable for breaching a contract to which they were not parties.  They point out that D & S Marine alleges that it had a contract with S & K Marine, and D & S Marine reaffirms in its opposition memorandum that the alleged contract was with S & K Marine, not Strafuss and BJS Blessey.  A person cannot be held liable for breaching a contract to which it is not a party. B-G & G Investors VI, L.L.C. v. Thibaut HG Corp., 985 So.2d 837, 842 (La. Ct. App. 2008).  Thus, Strafuss and BJS Blessy cannot be held liable for breach of contract or bad faith breach of contract in connection with a contract to which they were not parties.  To the extent D & S Marine alleges Strafuss and BSJ Blessy are liable for breach of contract or bad faith breach of contract with respect to the alleged charter party, such claims are DISMISSED WITHOUT PREJUDICE.

In this case, D & S Marine, and S & K Marine, after its registration with the Louisiana Secretary of State, had the capacity to contract. See id. at arts. 24 and 1918 (All persons, natural and juridical, have the capacity to contract); Ogea v. Merritt, 130 So.3d 888, 894 (La. 2013) (A limited liability company is a juridical person to which the law attributes personality).  It is also undisputed that the contract at issue concerned a certain object and a lawful purpose, i.e. a charter of a vessel that was under construction. See LA. CIV. CODE art. 1971 (Parties are free to contract for any object that is lawful, possible and determined or determinable). The parties dispute whether there was mutual consent.

Consent of the parties to a contract is established through offer and acceptance. Id. at art. 1927. "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." Id. Further, "[u]nless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made." Id.  However, "[w]hen, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." Id. at art. 1947.  In Breaux Bros. Const. Co. v. Assoc. Contractors, 226 La. 720 (La. 1954), the Supreme Court of Louisiana observed that:

> As far back as the year 1814 this court held that, where it has been agreed between the parties that an agreement shall be reduced to writing, the contract is not complete until it is written and signed by all the parties. Villere v. Brognier, 3 Mart., O.S., 326.
>
> In Fredericks v. Fasnacht, 30 La.Ann. 117, this court said:
>
>> '* * * It is elementary in our law, that where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until

7

> *the writing is perfected and signed.* The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. *In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete, and it can not be enforced until it is signed by all the parties.* Villéré v. Brognier, 3 Mart., O.S., 326, 349; Des Boulets v. Gravier, 1 Mart., N.S., 420, 421, 422; Bloeker v. Tillman, 4 La. 77, 80.'

> This principle of law has been consistently adhered to by this court ever since. See Evans v. Dudley Lumber Co., Inc., 164 La. 472, 114 So. 101, and authorities cited therein.

(emphasis in original).  The presumption created by Article 1947 can be rebutted by demonstrating that the parties tacitly accepted the terms agreed upon terms by beginning performance. See Myers v. Burger King Corp., 618 So.2d 1123 (La. Ct. App. 1993).

D & S Marine's complaint contains examples that demonstrate that it and S & K Marine contemplated that the charter party would be in writing.  Specifically, these examples are: the November 4, 2013, electronic mail message from McDaniel to the company's attorney regarding the terms of the contract; McDaniel's January 31, 2014, electronic mail message to Klotz stating that McDaniel would forward a copy of the contract and they would meet next week to finalize it; and, McDaniel's February 10, 2014, electronic mail message to Klotz stating that he was "sending over a final version [of the charter party] today, as we will get it to you shortly for review. I think we are done??"  Further, an unexecuted written draft of the charter party contains an integration clause which states:

> This Agreement constitutes the entire agreement between the parties concerning this Agreement and supersedes all prior agreements, written or verbal understandings or agreements, and this Agreement is the sole agreement between the parties as to the charter of the Vessel.  To be effective, any amendments hereto must be in writing and executed by both parties.

Although it appears that D & S Marine and S & K Marine contemplated that the final charter party would be reduced to writing, D & S Marine has also alleged that S & K Marine tacitly accepted the terms of the parties' oral agreement as to the major terms of the contract by permitting D & S Marine to spend money making modifications to the vessel as it was under construction. Because tacit acceptance can rebut Article 1947's presumption as to a required form, D & S Marine has stated a claim for breach of contract and bad faith breach of contract against S & K Marine. Therefore, S & K Marine's motion to dismiss is DENIED as to D & S Marine's breach of contract and bad faith breach of contract claims against it.

**D.     Tortious Interference with Contractual Relations**

Strafuss argues that D & S Marine cannot sustain a claim against him for intentional interference with a contract because there was no contract, and he simply accepted a better business deal.[4]

In 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228, 234 (La. 1989), the Supreme Court of Louisiana recognized a limited cause of action for tortious interference with contractual relations that pertains "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." The Court explained that:

---

[4]     S & K Marine and BJS Blessey joined in the motion to dismiss this cause of action.  D & S Marine's allegations pertaining to tortious interference with contractual relations are asserted in paragraphs 34 through 40 of the complaint.  These allegations are directed at Strafuss, and do not state such a claim against S & K marine or BJS Blessey.

an officer is privileged to induce the corporation to violate a contractual relation, or make its performance more burdensome, provided that the officer does not exceed the scope of his authority or knowingly commit acts that are adverse to the interests of his corporation. Where officers knowingly and intentionally act against the best interest of the corporation or outside the scope of their authority, they can be held liable by the party whose contract right has been damaged.

Id. at 231.  The elements of the cause of action are:

(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

Id. at 234.

D & S Marine alleges that Strafuss, a member of S & K Marine, intentionally interfered with its contract with S & K Marine by causing S & K Marine to breach the contract when he decided to charter the vessel to another party.  As explained herein *supra*, D & S Marine has stated a claim for breach of an alleged contract.  There has been no finding that there was no contract.  D & S Marine's allegations sufficiently state a claim for tortious interference with contractual relations against Strafuss.  Thus, the motion to dismiss is DENIED as to D & S Marine's tortious interference with contractual relations claims against Strafuss.

**E.    Detrimental Reliance**

Defendants argue that D & S Marine cannot sustain a cause of action for detrimental reliance because it was unreasonable for D & S Marine to rely on a contract that was not executed in its

contemplated form. D & S Marine argues that it has asserted a claim for detrimental reliance against

defendants because it reasonably relied on an oral agreement.

The doctrine of detrimental reliance is provided in Louisiana Civil Code article 1967, which

states:

> Cause is the reason why a party obligates himself. A party may be
> obligated by a promise when he knew or should have known that the
> promise would induce the other party to rely on it to his detriment
> and the other party was reasonable in so relying. Recovery may be
> limited to the expenses incurred or the damages suffered as a result
> of the promisee's reliance on the promise. Reliance on a gratuitous
> promise made without required formalities is not reasonable.

There are three elements required for the application of detrimental reliance: (1) a

representation by conduct or word; (2) justifiable reliance thereon; and (3) a change of position to

one's detriment because of the reliance. Morris v. Friedman, 663 So.2d 19, 25 (La. 1995). "[T]he

basis of detrimental reliance is 'the idea that a person should not harm another person by making

promises that he will not keep.'" Suire v. Lafayette City-Parish Consol. Gov't, 907 So.2d 37, 59 (La.

2005). "Thus, the focus of analysis of a detrimental reliance claim is ... whether a representation was

made in such a manner that the promisor should have expected the promisee to rely upon it, and

whether the promisee so relies to his detriment." Id.

In its complaint, D & S Marine alleges that it relied on S & K Marine's word and conduct

regarding the formation of the charter party, and believed that there was a valid contract because the

essential terms were agreed upon.  D & S Marine also alleges that it changed its position to its

detriment by spending money to modify the vessel under construction and entering into a sub-charter

agreement with one of its customers.  Because this court has not held there was no contract due to

a deficiency in its form, D & S Marine has sufficiently stated a cause of action for detrimental

reliance against S & K Marine.  However, D & S Marine has not stated a cause of action for detrimental reliance against Strafuss or BJS Blessey because it does not allege that it relied on any representations made by them.  Indeed, throughout the complaint D & S Marine alleges that it negotiated with Klotz, who was acting on S & K Marine's behalf.  Therefore, the motion to dismiss is GRANTED as to D & S Marine's detrimental reliance claims against Strafuss and BJS Blessey and DENIED as to D & S Marine's detrimental reliance claim against S & K Marine.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. #18) is **GRANTED** as to plaintiff's breach of contract, bad faith breach of contract, and detrimental reliance claims against Ben Strafuss and BJS Blessey, L.L.C., and such claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. #18) is **DENIED** as to plaintiff's breach of contract, bad faith breach of contract, and detrimental reliance claims against S & K Marine, and plaintiff's tortious interference with contractual relations claim agaisnt Ben Strafuss.

New Orleans, Louisiana, this  29th  day of January, 2015.

_____
**MARY ANN VIAL LEMMON**

**UNITED STATES DISTRICT JUDGE**